UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GENE T. FAVORS #159735,

    Plaintiff,

v.                                               Case No. 2:16-cv-33
                                               HON. GORDON J. QUIST

DAVID M. LEACH, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by state prisoner Gene T. Favors pursuant to 42 U.S.C. § 1983. Plaintiff asserts First and Fourteenth Amendment claims against Defendants David M. Leach, Unknown Rink, G. Gugin, R. Masker,[1] Unknown Valle, and Unknown Switzer. (ECF No. 1, PageID.6). Defendant Gugin filed a motion for summary judgment. (ECF No. 133). Plaintiff filed a motion for partial summary judgment against Defendant Gugin. (ECF No. 140). Plaintiff also filed an Affidavit of Jason Shaver that appears to be a response to Defendant Gugin's motion for summary judgment. (ECF No. 146). Defendant Gugin filed a response. (ECF Nos. 156, 157, & 158). In addition, Defendants Leach, Rink, Masker, Valle, and Switzer ("the MDOC Defendants") filed a separate motion for summary judgment. (ECF No. 143). Plaintiff filed a Declaration that appears to be his response to the MDOC Defendants' motion. (ECF No. 155). This matter is ready for decision.

        The claims in this case arise from a series of events that occurred while Plaintiff was confined at the Chippewa Correctional Facility (URF). Plaintiff first makes several complaints concerning his religion and the food he received at URF. Plaintiff states that he is a Sunni Muslim.

---

[1] Defendant Masker was mistakenly referred to as "Masher."

On June 9, 2014, Chaplain Bolton informed Plaintiff that the MDOC had denied his request for the religious vegan diet. On June 25, 2014, Plaintiff met with Chaplain Bolton. During this meeting, Chaplain Bolton explained that he did not know why Plaintiff was denied the religious diet. Plaintiff believes that he was denied the religious diet because he has history of filing grievances.

Plaintiff also alleges that his meals were cross contaminated with either pork or meat juices. He states that pork is placed next to non-meat foods and that the pork grease splashes onto the non-meat food. He also states that the cooking equipment is not properly cleaned. In addition, Plaintiff complains that some of the employees do not wear hairnets when handling the food. Plaintiff alleges that Defendant Gugin, a Trinity Services Group, Inc. ("Trinity") employee, has refused to correct these issues.

Plaintiff further alleges that, on October 4, 2014, Defendant Rink prohibited Plaintiff from bringing snacks to the Eid Service. On January 17, 2015, Plaintiff found a bug in his food. On September 23, 2015, Defendant Switzer told Plaintiff and other Muslim inmates that they were not allowed "to make Wudu" in the gym. Wudu is a religious ritual that involves the washing of body parts. Plaintiff alleges that Muslim inmates "have been making Wudu" in the gym "for years."

Plaintiff next makes several complaints regarding the handling of his mail at URF. On July 24, 2013, an individual attempted to mail to Plaintiff a Quran. Plaintiff never received the Quran. On October 14, 2014, Bound Together Books attempted to mail Plaintiff a book. However, Plaintiff never received the book. Plaintiff complains that Bound Together Books never received a rejection notice. Plaintiff states that Defendants altered the notice form that he received because

the form did not have a box to check to request a hearing. Plaintiff also alleges that Defendants opened his legal mail and removed the large envelopes, so he could not send mail back.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones*, Inc., 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); cf. *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Court will first address Defendant Valle. The MDOC Defendants argue that Plaintiff failed to allege that Defendant had the requisite personal involvement in this case. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Here, as the MDOC Defendants correctly note, Plaintiff mentions Defendant Valle only when naming him as a Defendant in the complaint. Plaintiff states that "Defendant Valle is a Business Office staff at Chippewa C.F." and that she is being sued in her official and individual capacity. (ECF No. 1, PageID.7). Plaintiff's fails to make any specific allegations against Defendant Valle; thus, Plaintiff falls short of the minimal pleading standards. Therefore, Defendant Valle should be dismissed from this case.

The Court will next address the issue of whether Plaintiff exhausted his administrative remedies. Defendant Gugin and the MDOC Defendants argue that Plaintiff did not exhaust his available administrative remedies. A prisoner's failure to exhaust his administrative

remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available

administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when,

where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II

---

[2] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." 851 F.3d at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ T, FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶¶ T, FF.  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ."  *Id.* at ¶ S.

In this case, Plaintiff appealed thirty-four grievances through Step III during the relevant time period.  The 208-page Step III Grievance Report is attached to Defendant Gugin's motion for summary judgment. (ECF Nos. 135-4, 135-5, & 135-6).  Defendant Gugin argues that "[a]lthough Plaintiff is no stranger to the MDOC grievance process, prior to filing this civil action, Plaintiff did not file any grievance(s) about (1) finding hair in his meals; (2) finding debris in his meal; and/or (3) Trinity employees allegedly not wearing hairnets." (ECF No. 134, PageID.747). Defendant Gugin further argues that even though Plaintiff filed a grievance alleging that his meals were being cross-contaminated with pork, he did not complete the grievance process prior to filing the lawsuit. The MDOC Defendants argue that Plaintiff exhausted only four of his claims—(1) Defendant Switzer prohibited Plaintiff from performing Wudu in the gym; (2) Defendant Rink prohibited Plaintiff from bringing a snack to the Eid service; (3) Defendant Masker refused to send Plaintiff's mail to Daphne Johnson; and (4) Defendant Masker rejected mail from Bound Together Books.  Plaintiff has not addressed the issue of exhaustion in any of his responses.

After reviewing the attached grievances, the undersigned finds that Plaintiff did not file any grievances alleging that he found hair in his food or that Trinity employees did not wear

hairnets when handling the food. Thus, in the opinion of the undersigned, Plaintiff did not exhaust any of his claims related to finding hair in his food or employees not wearing hairnets.

Although Plaintiff filed a grievance alleging that his meals were cross-contaminated with meat grease on November 30, 2015, Plaintiff filed this complaint prior to the grievance being exhausted through Step III.  In the relevant grievance, Plaintiff appealed to Step III on February 3, 2016 and the Step III Grievance decision was mailed to him on March 15, 2016. (ECF No. 135-3). Plaintiff filed the complaint in this case on February 4, 2016. (ECF No. 1). The Sixth Circuit has stated that "[t]he plain language of [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). "The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *Id.*

In addition, the undersigned notes that Plaintiff filed two other grievances that have similar allegations to his claims against Defendant Gugin. Plaintiff filed a grievance alleging that he found an insect in his food on January 17, 2015. (ECF No. 135-5, PageID.920). Plaintiff also filed a grievance alleging that pork grease was contaminating his food on May 19, 2014.  (ECF No. 135-6, PageID.949).  But at the time of both of these incidents, Trinity did not have a contract with the MDOC. Instead, Aramark was responsible for the food service in the MDOC during the alleged incidents.  Trinity did not enter into a contract to provide food services to the MDOC until July 14, 2015. (ECF No. 135-2, PageID.784).  Defendant Gugin—a Trinity employee—cannot be personally involved with either one of these alleged incidents.  Therefore, in the opinion of the undersigned, Defendant Gugin's motion for summary judgment should be granted.[3]

---

[3] Defendant Gugin also argues that he is entitled to summary judgment because his conduct does not constitute state action. Because the undersigned already finds that Defendant Gugin is entitled to summary judgment, the undersigned does not address this argument.

With respect to the MDOC Defendants, the undersigned agrees that Plaintiff only exhausted the following claims: (1) Defendant Switzer prohibited Plaintiff from performing Wudu; (2) Defendant Rink prohibited Plaintiff from bringing a snack to the Eid service; (3) Defendant Masker refused to send Plaintiff's mail to Daphne Johnson; and (4) Defendant Masker rejected mail from Bound Together Books. A review of all Plaintiff's grievances shows that Plaintiff grieved some of the events that he alleged in his complaint. However, Plaintiff failed to properly exhaust those grievances against any Defendants. For example, in one grievance, Plaintiff alleged that Corrections Officer Simmons "confiscated a large envelope from the Court of Claims." (ECF No. 135-5, PageID.910). But Officer Simmons is not a defendant in this case. Similarly, in a different grievance, Plaintiff alleged that Mail Room Staff J. Mertaugh "said I could not have the [Holy Quran] because it was not mail from an approved vendor." (ECF No. 135-6, PageID.987).[4] Mail Room Staff J. Mertaugh is not a defendant in this case. Because Plaintiff failed to name any Defendants in these grievances, these grievances cannot be used to exhaust his claims against Defendants. Furthermore, it appears that Plaintiff did not name most of the Defendants in any of the grievances. And, as mentioned above, Plaintiff did not address the issue of exhaustion in any of his responses, thus, he does not offer any explanation as to how he exhausted his available administrative remedies on any of his claims. Therefore, in the opinion of the undersigned, Plaintiff exhausted only the four claims identified above.

The Court will next address Plaintiff's claims that Defendant Masker violated his First Amendment and due process rights when he rejected the book from Bound Together Books. A prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system[.]" *Martin*

---

[4] The undersigned notes that this grievance was also rejected at Step II and Step III.

*v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell v. Procunier,* 417 U.S. 817, 822 (1974)); *see Turner v. Safley,* 482 U.S. 78 (1987).  It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948).  The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security.  *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (citations omitted*).*  It is well-established that courts afford "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

In this case, the grievance response indicates that the book was rejected because Bound Together Books is not an authorized vendor.  (ECF No. 135-5, PageID.926).  Plaintiff does not dispute that Bound Together Books is not an authorized vendor.  Instead, Plaintiff argues that other prisoners have been able to order books from this vendor. "It is well established that prison officials may limit prisoner's receipt of publications to authorized vendors." *Percival v. McGinnis*, 24 F. App'x 243, 247 (6th Cir. 2001) (citing *Skelton v. Pri–Cor, Inc.*, 963 F.2d 100, 103–04 (6th Cir.1991); *Ward v. Washtenaw County Sheriff's Dep't*, 881 F.2d 325, 329–30 (6th Cir. 1989); *see also Hill v. Bussell*, 2018 WL 1040347, at *5 (W.D. Mich. 2018) *R&R adopted by* 2018 WL 1014112 (W.D. Mich. 2018) (Maloney, J.). Therefore, Plaintiff's First Amendment claim based on the rejection of the books from an unauthorized vendor should be dismissed.

Plaintiff also appears to allege that he was denied due process because he did not receive a hearing when the book arrived at URF. Plaintiff contends that he received the proper

notice, but that Defendant Masker removed the box to check for a hearing on the notice form.  The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).  In this case, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985). Here, Plaintiff has failed to meet this burden.

Next, Plaintiff alleges that Defendant Masker refused to send Plaintiff's mail to Daphne Johnson.  Plaintiff's grievance and the response indicate that Plaintiff attempted to mail a letter to Attorney Daphne Johnson at the MDOC Office of Legal Affairs. (ECF No. 135-5,

PageID.899-903).  The mail was returned to Plaintiff because he did not have sufficient funds in his account to mail the letter.  Plaintiff states that letter should have been treated as legal mail. Pursuant to MDOC Policy 05.03.118, funds will be loaned to a prisoner who lacks sufficient funds to send mail to a court, an attorney, or a party to a lawsuit due to pending litigation.  But Plaintiff has not offered any evidence that the mail to Daphne Johnson should have been considered as legal mail. In fact, Plaintiff does not appear to address this claim in any of his responses.  Therefore, in the opinion of the undersigned, Plaintiff's claims related to the mail he attempted to send to Daphne Johnson should be dismissed.

Finally, the MDOC Defendants did not argue that they are entitled to summary judgment on the merits of two of Plaintiff's First Amendment claims: (1) Defendant Switzer prohibited Plaintiff from performing Wudu in the gym, and (2) Defendant Rink prohibited Plaintiff from bringing a snack to the Eid service. Therefore, in the opinion of the undersigned, these two First Amendment claims should remain in this case.

In addition, the undersigned notes that to the extent Plaintiff is asserting retaliation claims in this case, the undersigned recommends that those claims be dismissed. In his complaint, Plaintiff alleges that some of Defendants acted in retaliation for Plaintiff filing grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  In the opinion of the undersigned, Plaintiff has failed to show that any of the alleged conduct "was motivated, at least in part, by the protected conduct."

-13-

Instead, Plaintiff only offers conclusory allegations that Defendants acted in retaliation because Plaintiff has a history of filing grievances.

Accordingly, it is recommended that Defendant Gugin's motion for summary judgment (ECF No. 133) be granted and Plaintiff's motion for partial summary judgment (ECF No. 140) be denied. It is further recommended that the MDOC Defendants' motion for summary judgment (ECF No. 143) should be granted in part and denied in part. Defendants David M. Leach, G. Gugin, R. Masker, and Unknown Valle should be dismissed from this case. The remaining claims in this case should be a First Amendment claim against Defendant Switzer for prohibiting Plaintiff from performing Wudu in the gym; and a First Amendment claim against Defendant Rink for prohibiting Plaintiff from bringing a snack to the Eid service.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: January 17, 2019

                /s/ Timothy P. Greeley
                TIMOTHY P. GREELEY
                UNITED STATES MAGISTRATE JUDGE